# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL "DOE" ███████ ███████████ | CASE NO. <u>4:25-CV-01199</u> |
| *Plaintiff,* | COMPLAINT |
| v. | JURY TRIAL DEMANDED (8) |
| GEISINGER HEALTH PLAN<br>100 N. Academy Drive<br>Danville, PA 17822; | |
| GEISINGER QUALITY OPTIONS, INC.<br>100 N. Academy Drive<br>Danville, PA 17822; | |
| GEISINGER INDEMNITY INSURANCE COMPANY<br>100 N. Academy Drive<br>Danville, PA 17822; | |
| GEISINGER HEALTH SYSTEM<br>100 N. Academy Drive<br>Danville, PA 17822; | |
| GEISINGER<br>100 N. Academy Drive<br>Danville, PA 17822; | |
| RISANT HEALTH, INC.<br>900 7th Street NW<br>Washington, DC 20001; | |

RISANT HEALTH
900 7th Street NW
Washington, DC 20001;

KAISER PERMANENTE
1 Kaiser Plaza
Oakland, CA 94612;

KAISER FOUNDATION HEALTH
PLAN
1 Kaiser Plaza
Oakland, CA 94612;

KAISER FOUNDATION HOSPITALS
1 Kaiser Plaza
Oakland, CA 94612;

PERMANENTE MEDICAL GROUPS
1 Kaiser Plaza
Oakland, CA 94612;

ABC CORPORATION
100 N. Academy Drive
Danville, PA 17822,

    *Defendants.*

## **COMPLAINT**

Plaintiff, Michael "Doe," by and through her undersigned counsel, Justin Robinette, Esquire, hereby submits and files the instant Complaint against Defendants, Geisinger Health Plan, Geisinger Quality Options, Inc., Geisinger Indemnity Insurance Company, Geisinger Health System, Geisinger, Risant Health,

Inc., Risant Health, Kaiser Permanente, Kaiser Foundation Health Plan, Kaiser Foundation Hospitals, Permanente Medical Groups, and ABC Corporation, averring in support thereof, as follows:

## I.    <u>THE PARTIES:</u>

1.    Plaintiff, Michael "Doe" (hereinafter "Plaintiff") is a citizen and resident of Scranton, Pennsylvania, residing at ███████████████████████. Plaintiff is utilizing a Doe designation for her last name and has redacted her address from the Complaint consistent with Plaintiff's Motion to Proceed Anonymously filed on this same date.

2.    Plaintiff's legal name consists of Plaintiff's first name, "Michael." Plaintiff has not changed her legal name to date. Plaintiff is transgender. Plaintiff identifies her gender identity as female. Plaintiff's preferred pronouns are "she" and "her."

3.    Defendant, Geisinger Health Plan (hereinafter "Geisinger Health Plan") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business located at 100 N. Academy Drive, Danville, PA 17822.

4.    Defendant, Geisinger Quality Options, Inc. (hereinafter "Geisinger Quality Options, Inc.") is a corporation organized and existing under the laws of the

Commonwealth of Pennsylvania with its principal place of business located at 100 N. Academy Drive, Danville, PA 17822.

5.    Defendant, Geisinger Indemnity Insurance Company, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business located at 100 N. Academy Drive, Danville, PA 17822.

6.    Defendant, Geisinger Health System (hereinafter "Geisinger Health System") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 100 N. Academy Drive, Danville, PA 17822.

7.    Defendant, Geisinger (hereinafter "Geisinger"), is a healthcare organization with a principal place of business located at 100 N. Academy Drive, Danville, PA 17822.

8.    Geisinger Health System was acquired by Risant Health on March 31, 2024. Risant Health and Risant Health, Inc., are subsidiaries of Kaiser Permanente, Kaiser Foundation Health Plan, Kaiser Foundation Hospitals, or Permanente Medical Groups.  Kaiser Permanente is the parent organization of Risant Health.  Risant Health's first acquisition was Geisinger Health System.

9.    Defendant, Risant Health, is a corporation organized and existing under the

laws of the District of Columbia with a headquarters and principal place of business located at 900 7th Street NW Washington, DC 20001.

10.   Defendant, Risant Health, Inc., is a corporation organized and existing under the laws of the District of Columbia with a headquarters and principal place of business located at 900 7th Street NW Washington, DC 20001.

11.   Defendant, Kaiser Permanente, is a corporation organized and existing under the laws of the State of California with a headquarters and principal place of business located at 1 Kaiser Plaza, Oakland, CA 94612.

12.   Defendant, Kaiser Foundation Health Plan, is a corporation organized and existing under the laws of the State of California with a headquarters and principal place of business located at 1 Kaiser Plaza, Oakland, CA 94612.

13.   Defendant, Kaiser Foundation Hospitals, is a corporation organized and existing under the laws of the State of California with a headquarters and principal place of business located at 1 Kaiser Plaza, Oakland, CA 94612.

14.   Defendant, Permanente Medical Groups, is a corporation organized and existing under the laws of the State of California with a headquarters and principal place of business located at 1 Kaiser Plaza, Oakland, CA 94612.

15.   Defendant, "ABC Corporation," is included as an unnamed Defendant in this action.  It is believed and therefore averred that this entity is the corporate

Geisinger entity that sold the insurance policy at issue to Plaintiff if that entity was not Geisinger Health Plan.   It is believed that the address for this entity would be 100 N. Academy Drive, Danville, PA 17822.  The identity of this defendant is not known to Plaintiff at this time.  The identity of this Defendant may become known during the course of discovery into this matter.  This Defendant is included as a Doe designation and Plaintiff reserves the right to seek leave of Court to amend the Complaint to identify this Defendant more specifically as becomes necessary.

## II.    JURISDICTION & VENUE:

16.   This Court has jurisdiction over the parties and claims pled herein pursuant to 28 U.S.C. § 1331.

17.   This Court has supplemental jurisdiction over the related state law claims pled herein pursuant to 28 U.S.C. § 1367(a).

18.   This Court has jurisdiction over Defendants because Defendants' contacts with this state and judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the Supreme Court of the United States in *International Shoe Company v. State of Washington*, 326 U.S. 310 (1945), and its progeny.

6

19.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this judicial district.

### III.   <u>MATERIAL FACTS:</u>

20.   Plaintiff is a transgender female.

21.   At all times relevant hereto, Plaintiff was clinically diagnosed with gender dysphoria or "GD." Plaintiff was clinically diagnosed with GD by her therapist in 2020. Plaintiff has felt that her internal sense of her gender identity has been female since adolescence.

22.   Gender dysphoria is a medical and therapeutic diagnosis "associated with clinically significant distress or impairment in social, occupational, or other important areas of functioning" for a person who is transgender. *See Diagnostic and Statistical Manual of Mental Disorders*, 5th Ed. ("DSM-V" at 302.85).

23.   The substantial limitation on Plaintiff's interaction with others is characterized on a regular basis by severe problems in primarily social functioning of which she was diagnosed on account of her gender dysphoria.

24.   Various medical procedures, including facial feminization surgery (or "FFS"), are available to assist transgender women to ensure a body that is more in congruence with their gender identity in order to alleviate their gender

dysphoria.

25.   The World Professional Association of Transgender Health ("WPATH")
      Guidelines, Standards of Care 8, provide that the standard of care for gender
      dysphoria is to treat "gender affirming interventions," including "gender
      affirming facial surgery and body contouring," as "medically necessary." *See*
      Standards of Care for the Health of Transgender and Gender Diverse People,
      Version 8, *International Journal of Transgender Health*, 23(S1), S18 (2022).

26.   At all times relevant hereto, Plaintiff purchased insurance from the Defendants,
      Geisinger Health Plan, Geisinger Quality Options, Inc., Geisinger Indemnity
      Insurance Company, Geisinger Health System, Geisinger, and/or ABC
      Corporation (the "Geisinger Defendants").  The Geisinger Defendants issued
      and had in place for Plaintiff a policy of health insurance to insure Plaintiff for
      healthcare.  A true and correct copy of Geisinger Health Plan Policies and
      Procedures Manual, Medical Benefit Policy, Gender Dysphoria and Gender
      Confirmation Treatment, Policy MP307, for the relevant time, is attached
      hereto as Exhibit "A."

27.   Plaintiff sought insurance coverage from the Geisinger Defendants for facial
      feminization surgery, which constituted a form of gender affirming care and
      treatment, in an attempt to alleviate Plaintiff's gender dysphoria.

28.   The facial feminization surgery procedures sought by Plaintiff included a range of procedures such as a cranioplasty of the forehead, implants into the temples, facial osteotomy or bone augmentation procedures, maxillary impaction surgery for the bite and the chin, and a "mid-face setback" or a mid-face lift.

29.   Plaintiff did not elect to purchase health insurance through her employer's health insurance plan, because Plaintiff wanted to ensure that the facial feminization surgery procedures that Plaintiff specifically sought would be covered by insurance at the relevant time.

30.   Plaintiff has been working as a food delivery driver. Plaintiff discontinued her employer's health insurance coverage and instead sought coverage from the Geisinger Defendants for facial feminization surgery procedures believing them to be covered. The plan ultimately purchased by Plaintiff from the Geisinger Defendants was not an employer sponsored health plan covered by the Employee Retirement Income Security Act ("ERISA").

31.   Specifically, on or about April 30, 2021, Plaintiff called and spoke with a representative of Pennsylvania's health insurance marketplace exchange, or Pennie, the Pennsylvania Health Insurance Exchange Authority, and specifically inquired about the plans that would cover gender affirming care. Plaintiff was presented the option of a plan sold by the Geisinger Defendants.

Plaintiff specifically asked the representative whether facial feminization surgery, or FFS, forehead surgery, and jaw surgery, would be covered under the plan to be purchased, or words to that effect.  The representative stated that the plan would cover those procedures, or words to that effect.  Plaintiff was given no reason to doubt the same.  Plaintiff would not have purchased the plan had she understood differently that facial feminization surgery would not be covered by the plan.  Plaintiff also asked whether the plan would cover Plaintiff if she were out-of-network, for example, if her surgeon were in California, and the representative indicated that the plan would.

32.  In 2021, Plaintiff found difficulties in making ends meet but she ensured that she paid premiums every month in a timely manner to the Geisinger Defendants.  Plaintiff did so in order to ensure she maintained health insurance coverage with the Geisinger Defendants that Plaintiff believed would specifically cover the gender affirming procedures Plaintiff would be seeking.  Because of Defendants' ultimate denial of coverage for these procedures, Plaintiff was forced to expend at that time what was, in essence, Plaintiff's entire life savings to date.

33.  In reliance on the representation that the Geisinger Defendants' insurance plan would cover facial feminization surgery procedures, Plaintiff elected to

purchase the Geisinger Defendants' health insurance plan.  The effective date of the insurance plan that was purchased by Plaintiff from the Geisinger Defendants was May 1, 2021.

34.    The specific reason why Plaintiff sought and purchased the plan at the time, believing the representation that facial feminization surgery procedures would be covered under the plan, was because Plaintiff had scheduled a surgery date for the facial feminization surgery procedures for July 2, 2021.  The specific facial feminization surgery procedures sought by Plaintiff were the reason why she procured health insurance coverage from the Geisinger Defendants in the first instance.

35.    On or about June 28 or 29, 2021, Plaintiff submitted a preauthorization request to the Geisinger Defendants for coverage of the subject facial feminization surgery procedures.

36.    On account of the representation made to Plaintiff at the time of the sale of the insurance policy to Plaintiff, Plaintiff did not believe at the time that coverage for the procedures would be denied.  Plaintiff proceeded with the surgery which occurred as scheduled on July 2, 2021.

37.    Plaintiff supplied medical documentation in support of her request for coverage of the subject procedures in or about July 2021, including medical support from

both her surgeon and a mental health provider, and still believing at the time
that the subject procedures would be covered.

38.    On August 19, 2021, the Geisinger Defendants provided Plaintiff an initial
denial of Plaintiff's preauthorization request seeking coverage for facial
feminization surgery even though the procedures constituted a form of gender
affirming care and treatment for Plaintiff.  Plaintiff alleges that the Geisinger
Defendants applied their cosmetic surgery exclusion in a discriminatory manner
against Plaintiff and denied coverage to Plaintiff on account of discrimination
including for the reasons explained below.  *See* the relevant excerpt of the Initial
Denial Letter from the Geisinger Defendants attached hereto as Exhibit "B."
The initial denial letter indicates being written by the Medical Management
department of Geisinger Health Plan, which, the letter states, "may refer
collectively to health care coverage sponsors Geisinger Health Plan, Geisinger
Quality Options, Inc., and Geisinger Indemnity Insurance Company, unless
otherwise noted.  Geisinger Health Plan is part of Geisinger, an integrated
health care delivery and coverage organization." *See id.* at p. 2.

39.    The Geisinger Defendants put Plaintiff through an arduous process without ever
intending to cover Plaintiff's claim.

40.    Plaintiff subsequently sought an appeal of the denial of her request for coverage

to the Geisinger Defendants' internal review committee which upheld the denial of coverage for the procedures.

41. Plaintiff also filed for an external review seeking coverage of the subject procedures. Plaintiff's request related to coverage of the procedures was denied. The denial by the Geisinger Defendants was upheld.

42. It is believed and therefore averred that the Geisinger Defendants' policies do permit a retrospective review and do permit reimbursement. However, the Geisinger Defendants upheld their denial and have refused to pay the proceeds that are due under the policy for the reasons explained below.

43. Prior to instituting this action, Plaintiff also filed a complaint with the Pennsylvania Office of the Attorney General, Health Care Section, in an attempt to address her concerns. Plaintiff's complaint to the Pennsylvania Office of the Attorney General appeared to go nowhere. Plaintiff's complaint to the Pennsylvania Office of the Attorney General was to no avail. Plaintiff recollects being told by the investigator at one point that Plaintiff should seek out an attorney, or words to that effect.

44. Defendants, Geisinger Health Plan, Geisinger Quality Options, Inc., Geisinger Indemnity Insurance Company, Geisinger Health System, Geisinger, and/or ABC Corporation, discriminated against Plaintiff and other people who are

13

transgender based on sex, gender identity, gender stereotyping, and disability (gender dysphoria), by refusing to extend insurance coverage to Plaintiff and other people who are transgender suffering from gender dysphoria for facial feminization surgery, body contouring, and related procedures as part of the health insurance plans offered to Plaintiff by the Geisinger Defendants.

45. The Geisinger Defendants applied their cosmetic surgery exclusion in a discriminatory manner against Plaintiff and other people who are transgender. The Geisinger Defendants applied their cosmetic surgery exclusion in a discriminatory manner against Plaintiff based on sex, gender identity, gender stereotyping, and disability (gender dysphoria).

46. The Geisinger Defendants, in practice, drew a line between the aforementioned procedures sought as a form of gender affirming care and treatment, and other procedures, and specifically excluded the aforementioned gender affirming procedures for Plaintiff and other transgender people with a gender dysphoria diagnosis.

47. The Geisinger Defendants, in practice, intentionally created a barrier for Plaintiff and other people who are transgender to access medical services to treat their gender dysphoria.

48. The Geisinger Defendants intentionally carved out an exclusion based on

Plaintiff's transgender status and discriminated against Plaintiff as a transgender person on the basis of sex.

49. The Geisinger Defendants presented Plaintiff with the choice of maintaining natal sex characteristics with which she did not identify, or enduring financial hardship should she seek to transition, which constitutes discrimination against Plaintiff because she is transgender.

50. Although Plaintiff disputes the genuineness of the reasons provided by the Geisinger Defendants for denying Plaintiff's claim, Plaintiff acknowledges that the Geisinger Defendants' first listed reason contained on Exhibit "B," the initial denial letter to Plaintiff, states that Plaintiff did not receive hormone replacement therapy for one (1) year. This requirement is applied only to transgender individuals applying for coverage under the policy. A similar requirement is not applied to an individual who is cisgender and who applies for coverage due to another reason that is medically necessary. Only transgender individuals are being singled out for differential and unfavorable treatment under the policy. *United States v. Skrmetti*, 605 U.S. ___ (2025), is distinguishable on this basis.

51. In *Skrmetti*, the Supreme Court of the United States did not extend the reasoning of *Bostock v. Clayton County, Georgia*, 590 U.S. 644 (2020), to a

15

scenario where individuals under eighteen (18) were being restricted from access to gender affirming care, reasoning that *Bostock* does not apply because transgender individuals are not being disadvantaged compared to similarly situated cisgender individuals. In other words, any individual under the age of eighteen (18)—male, female, cisgender, or transgender—is being restricted from accessing gender affirming care in *Skrmetti*. *Skrmetti* only involved children seeking gender affirming care, and not adults seeking gender affirming care, whereas Plaintiff is an adult.

52. Further, setting aside the other reasons that the instant denial carves out an exclusion against Plaintiff as a transgender person on the basis of sex, draws a line on the basis of sex, and involves sex stereotypes, it should nevertheless be pointed out that even using a rigid comparator framework, a similarly situated cisgender person would not be similarly required to initiate treatment with gender hormones in such a scenario, and as such, the transgender person is being disadvantaged, not the cisgender person, in such a scenario. Likewise, a cisgender person seeking reconstructive facial, forehead, or jaw surgery for another reason that is medically necessary other than gender dysphoria is being covered while a transgender person is not being covered.

53. Plaintiff's sex is inextricably tied to the denial of coverage for gender affirming

care and treatment.

54.    The Geisinger Defendants' purported reason for denying coverage, that Plaintiff did not take female or feminizing hormones for one (1) year or more, also inherently draws a line based on sex or gender.

55.    Assuming *arguendo* that the Geisinger Defendants' reasoning is sincere, which Plaintiff does not, the discriminatory line that is being drawn is a form of gatekeeping and is in reality arbitrary. For example, an individual who received hormone replacement therapy for 364 days would allegedly not be covered by the subject policy.

56.    In the instant case, an individual with gender dysphoria like Plaintiff who did not receive hormone replacement therapy for one (1) year was not covered by the policy even though she lived full-time in the preferred gender for one (1) year or more.

57.    There is no medical requirement that an individual undergo hormone replacement therapy prior to being considered for facial feminization procedures. Facial feminization procedures are not dependent on hormone replacement therapy. Hormone replacement therapy will not alter the underlying bone structure of the face necessitating facial feminization procedures. Plaintiff's facial features caused her dysphoria, separate from

another area of her body, at the relevant time.

58.     In Plaintiff's circumstance, Plaintiff's surgeon was willing to perform facial feminization procedures without Plaintiff having previously undergone hormone replacement therapy.  Plaintiff's mental health provider provided a letter of support stating that the subject procedures were medically necessary and appropriate without hormone replacement therapy first being initiated. Defendants' denial premised on a claimant first initiating hormone replacement therapy is arbitrary, premised on societal stereotypes, and constitutes discrimination.

59.     The provider who provided support for the above denial from the Geisinger Defendants was identified by specialty as being a *hand* surgeon, when Plaintiff was seeking *facial* surgery.

60.     Furthermore, it is also acknowledged that according to the written terms of the Geisinger Defendants' policy, at Exhibit "A," body sculpting procedures including feminization and masculinization of the face are considered cosmetic, and thereby excluded from coverage, when sought for gender affirming purposes.  *See* Exhibit "A," Geisinger Health Plan Policies and Procedures Manual, Medical Benefit Policy, Gender Dysphoria and Gender Confirmation Treatment, Policy MP307, at p. 3 ("EXCLUSIONS:    The

following procedures are considered to be cosmetic and not medically necessary to complete gender transition … body sculpting (*e.g.*, masculinization or feminization of face … ."). However, Plaintiff contends that this language further supports Plaintiff's claims in that, in practice, the Geisinger Defendants singled out these gender affirming procedures, as opposed to other procedures, and excluded them from coverage when sought for gender affirming purposes, as opposed to other purposes. It is therefore contended that such procedures are being excluded because they are gender affirming procedures as opposed to other procedures. This conduct draws a line based on sex, carves out an exclusion based on transgender status, and constitutes discrimination against the plaintiff because she is transgender. *See Doe v. City of Philadelphia, et al.*, Case No. 24-0468, 2024 U.S. Dist. LEXIS 137444, at *13-14 (E.D. Pa. Aug. 2, 2024).

61. By the plain language of the policy, individuals who seek the same procedures as medically appropriate for a reason other than to complete their gender transition are not being excluded from coverage, while only individuals who seek the procedures to complete their gender transition are being excluded, which is further evidence of disparate treatment and discrimination. That is, individuals who are not transgender and who do not suffer from gender

dysphoria are not affected by the exclusion in Policy MP307 because these individuals are not seeking specifically "to complete a gender transition." However, if an individual who is not transgender and who does not suffer from gender dysphoria sought one of these same procedures as medically appropriate, so long as the procedures were not sought for gender affirming purposes, then the exclusion in Policy MP307 would not apply to that individual and the services would be considered covered services. Defendants' policy of excluding coverage therefore applies only to transgender individuals and excludes them from coverage because they are transgender and suffer from gender dysphoria. Using the logic of *Bostock* and also of *Skrmetti*, such conduct constitutes discrimination on the basis of sex.

62. It should be pointed out that despite the policy containing the above language that the first reason for Plaintiff's denial appears to have been Defendants' contention that initiating hormone replacement therapy for one (1) year is purportedly a predicate for such procedures, which Plaintiff does *not* believe specifically appears as a prerequisite in the policy document for facial feminization surgery procedures for adults, and which, as above, Plaintiff contends is not sincere, and also singles out transgender individuals suffering from gender dysphoria for disparate treatment.

63.    The Geisinger Defendants and not Plaintiff or her medical providers made the determination that undergoing the subject procedures was not medically necessary for Plaintiff to complete her transition.  However, the medical necessity determination must be made based on the claimant's internal sense of her gender, or her gender identity, and not on external markers of her outward gender expression.  What matters, in other words, is how the plaintiff identified herself.  *See Doe v. Independence Blue Cross*, No. 23-1530, ___ F. Supp. 3d ___, 2023 WL 8050471, at *5 (E.D. Pa. Nov. 21, 2023).  It is contended that the Geisinger Defendants illegally denied coverage to Plaintiff for her to complete her transition based on external markers of her gender expression—whether or not she had made changes first using hormone replacement therapy—instead of how she identified herself (her gender identity), and not based on her letter of medical support from her mental health provider or her surgeon's recommendation.   Plaintiff contends that Defendants' conduct in reality relied upon societal stereotypes.

64.    The Geisinger Defendants' act of delineating which procedures are necessary and which procedures are not necessary for a transgender person to complete their gender transition relies upon societal stereotypes rather than how the person identifies themself, their individualized circumstances, or based upon

the recommendation of their medical provider. These questions were not addressed by *Skrmetti*, and are, from Plaintiff's perspective, what these type of restrictions on transgender healthcare are all about—stereotypes about what makes a person a real man or a real woman, or what makes them masculine enough or feminine enough by society's standards. For example, the insurer who elects to cover genital reconstruction, but not breast augmentation, is saying that a trans person is feminine enough or masculine enough with the genital reconstruction, and not the breast augmentation. An insurer who will cover breast augmentation, but not a forehead or an Adam's Apple reduction, is saying that a trans person is feminine enough with the breast augmentation, and does not need the forehead or the Adam's Apple reduction.

65.    By way of explanation, Plaintiff had a specific gender transition timeline. The order of the procedures for Plaintiff's specific transition plan occurred as follows: electrolysis or hair removal, facial feminization surgery, hormone replacement, and hip and pelvic augmentation. Plaintiff subsequently scheduled genital reconstruction surgery. Plaintiff also has an approximate timeframe for breast augmentation, and body contouring (waistline narrowing and clavicle shortening).

66.    The desire of Plaintiff, and from Plaintiff's perspective, many other people

who are transgender, is the real life experience of fitting in and being recognized by others for who they are inside. Plaintiff desired not to be identified or outed as being trans in public, which is often the experience of transgender people, by virtue of perceptions of the transgender individual's secondary sex characteristics. This is to point out why Plaintiff sought facial feminization procedures before other body changes. The point is that Plaintiff had medical support from her mental health treatment provider for the facial feminization surgery procedures when they were sought and her surgeon was willing to perform the procedures and recognized them as medically necessary. It is of no consequence that Plaintiff later underwent hormone replacement therapy, or breast augmentation, or whether she will have genital reconstruction. The point is that at the time the Geisinger Defendants denied Plaintiff's request it was based not on her internal sense of her gender identity, but based on external markers of her gender expression, and based on societal assumptions or stereotypes about trans people, and about what constitutes a real man or a real woman.

67. Second, although, once again, the genuineness of these reasons are not being conceded, it is acknowledged that the Geisinger Defendants stated as the second reason for their denial in Exhibit "B" that Plaintiff did not have

behavioral health evaluations from two (2) clinicians. This is incorrect. Plaintiff did have the support of her surgeon and of her mental health provider. Plaintiff's surgeon was a plastic surgeon and transgender healthcare specialist. Plaintiff's therapist has expertise in mental health treatment of transgender individuals. This stated reason completely disregards the knowledge and opinions of the two (2) healthcare professionals who supported Plaintiff's request and who had expertise in gender affirming care. Further, in the context of a retrospective review, or of reimbursement, Plaintiff's ability to procure evaluations from other providers on top of those two (2) was never considered. It should also be pointed out that the Geisinger Defendants had *one* clinician initially support the denial, and that person was a *hand* surgeon. Stating that Plaintiff did not have two (2) clinicians, or the appropriate level of clinicians, is a pretext. In the instant case, in fact, Plaintiff intends to procure an expert witness to testify that facial feminization surgery is medically necessary for a transgender person suffering from gender dysphoria. *See Doe v. Independence Blue Cross*, No. 23-1530 (E.D. Pa. 2023) (testimony of Brodie Parent, M.D., plastic surgery and transgender healthcare expert, permitted over the insurer's *Daubert* challenge on the question of the medical necessity of facial feminization procedures for transgender individuals suffering from gender

dysphoria). The Geisinger Defendants did not follow their policy correctly with respect to Plaintiff and other transgender individuals suffering from gender dysphoria. Plaintiff should have been covered by the policy and the Geisinger Defendants discriminated against Plaintiff by denying Plaintiff coverage under the policy.

68.    The Geisinger Defendants also stated, third, in the denial to Plaintiff that Plaintiff was not seeking surgery related to chewing or swallowing. However, the Geisinger Defendants' policy related to treatment of gender dysphoria does not require a claimant to state an impairment in chewing, swallowing, or a physical or other physiologic function, in order to secure coverage for gender affirming care and treatment. *See Doe v. Independence Blue Cross*, No. 23-1530, ___ F. Supp. 3d ___, 2023 WL 8050471 (finding that the insurer's stated reason for the denial, that there was a requirement to show an impairment of a physiologic function, like a physical deformity, was incorrect, as impairments in social and occupational functioning were sufficient under the policy related to gender dysphoria treatment to state impairments for which coverage should have been provided). Similarly, here, the requirement that Plaintiff present a type of impairment of a physiologic function, like chewing or swallowing, is pretextual as such a requirement is not contained as a requirement in the policy.

25

The Geisinger Defendants again did not follow the policy correctly with respect to Plaintiff and other transgender individuals suffering from gender dysphoria. From Plaintiff's perspective, the Geisinger Defendants are coming up with reasons to deny the claim when they never intended to pay the claim in the first instance. The Geisinger Defendants never intended to pay the claim despite the representations made to Plaintiff at the time of the sale of the insurance policy that the care would be covered.

69. The reasons provided by the Geisinger Defendants are a pretext for discrimination against Plaintiff as a transgender person.

70. Plaintiff expended large sums of money to pay for facial feminization procedures not covered by the Geisinger Defendants including approximately $97,000.00 to cover the aforementioned procedures without insurance. Plaintiff was forced to expend at that time what was, in essence, Plaintiff's entire life savings to date. Plaintiff seeks damages as well as equitable/injunctive relief on behalf of herself and other transgender people to have the right to access medically necessary healthcare.

71. It is alleged that the Geisinger Defendants have engaged in predatory behavior as it is alleged they never intended to pay Plaintiff's claim and, at all relevant times, were looking for reasons to deny the claim out of financial self-interest.

## IV.  CLAIMS FOR RELIEF:

**COUNT I:**
**DISCRIMINATION BASED ON SEX IN VIOLATION OF SECTION 1557
OF THE AFFORDABLE CARE ACT, 42 U.S.C. § 18116
(PLAINTIFF, MICHAEL "DOE" v. DEFENDANTS, GEISINGER
HEALTH PLAN, GEISINGER QUALITY OPTIONS, INC., GEISINGER
INDEMNITY INSURANCE COMPANY, GEISINGER HEALTH SYSTEM,
GEISINGER, RISANT HEALTH, INC., RISANT HEALTH, KAISER
PERMANENTE, KAISER FOUNDATION HEALTH PLAN, KAISER
FOUNDATION HOSPITALS, PERMANENTE MEDICAL GROUPS, AND
ABC CORPORATION)**

72.    Plaintiff restates and realleges all previous paragraphs as though fully set forth here.

73.    Congress prohibited sex discrimination in any health care program and activity, including policies of insurance issued on behalf of health insurance companies, at 42 U.S.C. § 18116, also known as Section 1557, the Patient Protection and Affordable Care Act, or Affordable Care Act.

74.    It is believed and therefore averred that Defendants received Federal financial assistance, including, it is believed, for their health programs or activities, and therefore constitute covered entities under Section 1557 of the Affordable Care Act.

75.    It is believed and therefore averred that Defendants constitute issuers of insurance products, plans, and benefits that receive Federal financial assistance

for those products, plans, and benefits.  It is believed and therefore averred that

Defendants are health insurance issuers and are therefore covered entities within

the meaning of Section 1557 of the Affordable Care Act.  45 C.F.R. § 92.4.3.

76.    42 U.S.C. § 18116 covers the Defendants as Section 18116 provides, in

pertinent part, as follows:

§ 18116. Nondiscrimination.

(a) In general.

Except as otherwise provided for in this title (or an
amendment made by this title), an individual shall not, on
the ground prohibited under title VI of the Civil Rights Act
of 1964 (42 U.S.C. 2000d *et seq.*), title IX of the Education
Amendments of 1972 (20 U.S.C. 1681 *et seq.*), the Age
Discrimination Act of 1975 (42 U.S.C. 6101 *et seq.*), or
section 794 of title 29, be excluded from participation in, be
denied the benefits of, or be subjected to discrimination
under, any health program or activity, any part of which is
receiving Federal financial assistance, including credits,
subsidies, or contracts of insurance, or under any program
or activity that is administered by an Executive Agency or
any entity established under this title (or amendments).

42 U.S.C. § 18116(a).

77.    Section 1557 of the Affordable Care Act, along with its implementing

regulations, at 45 CFR § 92, *et seq.*, 81 FR 31375-473 (May 18, 2016), have

adopted the ACA non-discrimination rule, which prohibits discrimination based

on sex, gender identity, and gender expression, by referring to and incorporating

therein the prohibitions of Title IX (20 U.S.C. § 1681) against sex discrimination including its enforcement provisions.

78.    According to 45 CFR § 92.1, "Section 1557 requires the application of the enforcement mechanisms under Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d *et seq.*), Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 *et seq.*), the Age Discrimination Act of 1975 (42 U.S.C. 6101 *et seq.*), and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) for purposes of violations of Section 1557 and this part." 45 CFR § 92.1 (Subpart A – General Provisions).

79.    45 CFR § 92.2 further provides in pertinent part:

> Except as provided in Title I of the Patient Protection and Affordable Care Act (or any amendment thereto), an individual shall not, on any of the grounds set forth in paragraph (b) of this section, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any health program or activity, any part of which is receiving Federal financial assistance (including credits, subsidies, or contracts of insurance) provided by the U.S. Department of Health and Human Services; or under any program or activity administered by the Department under such Title; or under any program or activity administered by any entity established under such Title.

45 CFR § 92.2.

80.    Upon information and belief, Defendants were required to certify compliance with the prohibitions against sex discrimination in 42 U.S.C. § 18116 in order to participate in the Commonwealth of Pennsylvania's State Health Insurance

Exchange, under 45 C.F.R. § 92.4:

> Assurances.
>
> (a) Assurances.  An entity applying for Federal financial assistance to which this part applies shall, as a condition of any application for Federal financial assistance, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the entity's health programs or activities will be operated in compliance with section 1557 and this part.  A health insurance issuer seeking certification to participate in an Exchange or a State seeking approval to operate a State Exchange to which section 1557 or this part applies shall, as a condition of certification or approval, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the health program or activity will be operated in compliance with section 1557 and this part.  An applicant or entity may incorporate this assurance by reference in subsequent applications to the Department for Federal financial assistance or requests for certification to participate in an Exchange or approval to operate a State Exchange.

45 C.F.R. § 92.4.

81. Section 1557 provides that "an individual shall not, on the ground prohibited under …Title IX of the Education Amendments of 1972 (20 U.S.C. 1681, et seq.)" – which prohibits discrimination "on the basis of sex" – "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance."  42 U.S.C. § 18116(a).

82. The Department of Health and Human Services' ("HHS") regulations including the ACA non-discrimination rule apply to "covered entities" and prohibit

discrimination on the basis of gender identity. 45 C.F.R. §§ 92.4, 92.207.

83. Discrimination on the basis of gender identity, transgender status, gender transition, or gender nonconformity constitutes discrimination on the basis of "sex" under Section 1557.

84. Defendants, Geisinger Health Plan, Geisinger Quality Options, Inc., Geisinger Indemnity Insurance Company, Geisinger Health System, Geisinger, and/or ABC Corporation, discriminated against Plaintiff by denying Plaintiff's pre-authorization request for coverage of facial feminization surgery procedures when sought as a form of gender affirming care and treatment.

85. On or about April 30, 2021, Plaintiff called and spoke with a representative of Pennsylvania's health insurance marketplace exchange, or Pennie, the Pennsylvania Health Insurance Exchange Authority, and specifically inquired about the plans that would cover gender affirming care. Plaintiff was presented the option of a plan sold by the Geisinger Defendants. Plaintiff specifically asked the representative whether facial feminization surgery, or FFS, forehead surgery, and jaw surgery, would be covered under the plan to be purchased, or words to that effect. The representative stated that the plan would cover those procedures, or words to that effect. Plaintiff was given no reason to doubt the same. Plaintiff would not have purchased the plan had she understood

differently that facial feminization surgery would not be covered by the plan. Plaintiff also asked whether the plan would cover Plaintiff if she were out-of-network, for example, if her surgeon were in California, and the representative indicated that the plan would.

86. On or about August 19, 2021, the Geisinger Defendants denied Plaintiff's preauthorization request seeking coverage for facial feminization surgery even though the procedures constituted a form of gender affirming care and treatment for Plaintiff.

87. The Geisinger Defendants, in practice, drew a line between the aforementioned procedures sought as a form of gender affirming care and treatment, and other procedures, and specifically excluded the aforementioned gender affirming procedures for Plaintiff and other transgender people with a gender dysphoria diagnosis.

88. The Geisinger Defendants, in practice, intentionally created a barrier for Plaintiff and other people who are transgender to access medical services to treat their gender dysphoria.

89. The Geisinger Defendants intentionally carved out an exclusion based on Plaintiff's transgender status and discriminated against Plaintiff as a transgender person on the basis of sex.

90.  Plaintiff's sex is inextricably tied to the denial of coverage for gender affirming care and treatment.

91.  The Geisinger Defendants presented Plaintiff with the choice of maintaining natal sex characteristics with which she did not identify, or enduring financial hardship should she seek to transition, which constitutes discrimination against Plaintiff because she is transgender.

92.  Further, setting aside the other reasons that the instant denial carves out an exclusion against Plaintiff as a transgender person on the basis of sex, draws a line on the basis of sex, and involves sex stereotypes, it should nevertheless be pointed out that even using a rigid comparator-based framework, a similarly situated cisgender person would not be similarly required to initiate treatment with gender hormones in such a scenario, and as such, the transgender person is being disadvantaged, not the cisgender person, in such a scenario.

93.  The Geisinger Defendants' purported reason for denying coverage, that Plaintiff did not take female or feminizing hormones for one (1) year or more, also inherently draws a line based on sex or gender.

94.  It is acknowledged that according to the written terms of the Geisinger Defendants' policy, at Exhibit "A," body sculpting procedures including feminization and masculinization of the face are considered cosmetic, and

thereby excluded from coverage, when sought for gender affirming purposes. *See* Exhibit "A," Geisinger Health Plan Policies and Procedures Manual, Medical Benefit Policy, Gender Dysphoria and Gender Confirmation Treatment, Policy MP307, at p. 3 ("EXCLUSIONS:  The following procedures are considered to be cosmetic and not medically necessary to complete gender transition … body sculpting (*e.g.*, masculinization or feminization of face … .").   However, Plaintiff contends that this language further supports Plaintiff's claims in that, in practice, the Geisinger Defendants singled out these gender affirming procedures, as opposed to other procedures, and excluded them from coverage when sought for gender affirming purposes, as opposed to other purposes.  It is therefore contended that such procedures are being excluded because they are gender affirming procedures as opposed to other procedures.  This conduct draws a line based on sex, carves out an exclusion based on transgender status, and constitutes discrimination against the plaintiff because she is transgender.  *See Doe v. City of Philadelphia, et al.*, Case No. 24-0468, 2024 U.S. Dist. LEXIS 137444, at *13-14 (E.D. Pa. Aug. 2, 2024).

95.   By the plain language of the policy, individuals who seek the same procedures as medically appropriate for a reason other than to complete their gender transition are not being excluded from coverage, while only individuals who

seek the procedures to complete their gender transition are being excluded, which is evidence of disparate treatment and discrimination. That is, individuals who are not transgender and who do not suffer from gender dysphoria are not affected by the exclusion in Policy MP307 because these individuals are not seeking specifically "to complete a gender transition." However, if an individual who is not transgender and who does not suffer from gender dysphoria sought one of these same procedures as medically appropriate, so long as the procedures were not sought for gender affirming purposes, then the exclusion in Policy MP307 would not apply to that individual and the services would be considered covered services. Defendants' policy of excluding coverage therefore applies only to transgender individuals and excludes them from coverage because they are transgender and suffer from gender dysphoria. Using the logic of *Bostock* and also of *Skrmetti*, such conduct constitutes discrimination on the basis of sex.

96.    It should be pointed out that despite the policy containing the above language that the first reason for Plaintiff's denial appears to have been Defendants' contention that initiating hormone replacement therapy for one (1) year is purportedly a predicate for such procedures, which Plaintiff does *not* believe specifically appears as a prerequisite in the policy document for facial

feminization surgery procedures for adults, and which, as above, Plaintiff contends is not sincere, and also singles out transgender individuals suffering from gender dysphoria for disparate treatment.

97.    The Geisinger Defendants and not Plaintiff or her medical providers made the determination that undergoing the subject procedures was not medically necessary for Plaintiff to complete her transition.  However, the medical-necessity determination must be made based on the claimant's internal sense of her gender, or her gender identity, and not on external markers of her outward gender expression.  What matters, in other words, is how the plaintiff identified herself.  *See Doe v. Independence Blue Cross*, No. 23-1530, ___ F. Supp. 3d ___, 2023 WL 8050471, at *5 (E.D. Pa. Nov. 21, 2023).  It is contended that the Geisinger Defendants illegally denied coverage to Plaintiff for her to complete her transition based on external markers of her gender expression—whether or not she had made changes first using hormone replacement therapy—instead of how she identified herself (her gender identity), and not based on her letter of medical support from her mental health provider or her surgeon's recommendation.  Plaintiff contends that Defendants' conduct in reality relied upon societal stereotypes.

98.    Plaintiff expended large sums of money to pay for facial feminization

procedures not covered by Defendants including approximately $97,000.00 to cover the aforementioned procedures not covered by insurance.  Plaintiff was forced to expend at that time what was, in essence, Plaintiff's entire life savings to date.

99.    The four-year Federal catch-all statute of limitations applies to Plaintiff's claims under Section 1557 of the ACA.  *See* 28 U.S.C. § 1658(a).

**WHEREFORE**, Plaintiff, Michael "Doe," requests judgment in favor of Plaintiff and against Defendants, Geisinger Health Plan, Geisinger Quality Options, Inc., Geisinger Indemnity Insurance Company, Geisinger Health System, Geisinger, Risant Health, Inc., Risant Health, Kaiser Permanente, Kaiser Foundation Health Plan, Kaiser Foundation Hospitals, Permanente Medical Groups, and ABC Corporation, jointly and severally, in an amount which will fully and fairly compensate Plaintiff for any and all out-of-pocket costs/expenses, attorneys' fees, costs, pre- and post-judgment interest, equitable and injunctive relief requiring Defendants to cover transgender individuals who suffer from gender dysphoria for facial feminization surgery and any further relief that this Court deems just, proper, and equitable.

**COUNT II:**
**DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF SECTION 1557 OF THE AFFORDABLE CARE ACT, 42 U.S.C. § 18116 (PLAINTIFF, MICHAEL "DOE" v. DEFENDANTS, GEISINGER HEALTH PLAN, GEISINGER QUALITY OPTIONS, INC., GEISINGER INDEMNITY INSURANCE COMPANY, GEISINGER HEALTH SYSTEM,**

**GEISINGER, RISANT HEALTH, INC., RISANT HEALTH, KAISER PERMANENTE, KAISER FOUNDATION HEALTH PLAN, KAISER FOUNDATION HOSPITALS, PERMANENTE MEDICAL GROUPS, AND <u>ABC CORPORATION)</u>**

100. Plaintiff restates and realleges all previous paragraphs as though fully set forth here.

101. Plaintiff has a disability, gender dysphoria, or "GD," which constitutes a covered disability within the meaning of Section 1557 of the Affordable Care Act.

102. Gender dysphoria is a medical and therapeutic diagnosis associated with clinically significant distress or impairment in social, occupational, or other important areas of functioning for the transgender person.

103. Transgender people are diagnosed as suffering from GD when they have clinically significant distress associated with being transgender.

104. GD is a disability in that it substantially impairs one or more major life activities, including, but not limited to, neurological, brain, social, or occupational functioning.

105. It is alleged gender dysphoria results from a physical impairment. Plaintiff's gender dysphoria results from a physical impairment. It is alleged Plaintiff's gender dysphoria substantially limited Plaintiff in neurological or brain functioning.

106.  Plaintiff's gender dysphoria substantially limited Plaintiff in the major life activity of social functioning.

107.  Congress prohibited discrimination in any health care program and activity, including policies of insurance issued on behalf of health insurance companies, on the basis of disability, that includes the Defendants, at 42 U.S.C. § 18116, also known as Section 1557, the Affordable Care Act.

108.  42 U.S.C. § 18116 provides, in pertinent part, as follows:

§ 18116. Nondiscrimination.

(a) In general.

Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d *et seq.*), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 *et seq.*), the Age Discrimination Act of 1975 (42 U.S.C. 6101 *et seq.*), ***or section 794 of title 29 [the Rehabilitation Act of 1973],*** be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments).

42 U.S.C. § 18116(a) (emphasis added).

109.  According to 45 CFR § 92.1, "Section 1557 requires the application of the enforcement mechanisms under Title VI of the Civil Rights Act of 1964 (42

U.S.C. 2000d *et seq.*), Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 *et seq.*), the Age Discrimination Act of 1975 (42 U.S.C. 6101 *et seq.*), and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) for purposes of violations of Section 1557 and this part." 45 CFR § 92.1 (Subpart A – General Provisions).

110. Upon information and belief, Defendants were required to certify compliance with the prohibitions against discrimination based on disability as set forth in 42 U.S.C. § 18116 in order to participate in the Commonwealth of Pennsylvania's State Health Insurance Exchange, under 45 C.F.R. § 92.4:

> Assurances.
>
> > (a)    Assurances.    An entity applying for Federal financial assistance to which this part applies shall, as a condition of any application for Federal financial assistance, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the entity's health programs or activities will be operated in compliance with section 1557 and this part. A health insurance issuer seeking certification to participate in an Exchange or a State seeking approval to operate a State Exchange to which section 1557 or this part applies shall, as a condition of certification or approval, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the health program or activity will be operated in compliance with section 1557 and this part. An applicant or entity may incorporate this assurance by reference in subsequent applications to the Department for Federal financial assistance or requests for certification to participate in an Exchange or approval to operate a State Exchange.

45 C.F.R. § 92.4

111.   The Department of Health and Human Services ("HHS") regulations including the ACA non-discrimination rule apply to "covered entities" and prohibit discrimination on the basis of actual or perceived disability.  45 C.F.R. §§ 92.4, 92.207.

112.   Defendants constitute covered entities under 45 C.F.R. § 92.4.3.

113.   Plaintiff has been wrongfully subjected to discrimination by Defendants because of her disability (gender dysphoria).

114.   On or about April 30, 2021, Plaintiff called and spoke with a representative of Pennsylvania's health insurance marketplace exchange, or Pennie, the Pennsylvania Health Insurance Exchange Authority, and specifically inquired about the plans that would cover gender affirming care.  Plaintiff was presented the option of a plan sold by the Geisinger Defendants.  Plaintiff specifically asked the representative whether facial feminization surgery, or FFS, forehead surgery, and jaw surgery, would be covered under the plan to be purchased, or words to that effect.  The representative stated that the plan would cover those procedures, or words to that effect.  Plaintiff was given no reason to doubt the same.   Plaintiff would not have purchased the plan had she understood differently that facial feminization surgery would not be covered by the plan.

Plaintiff also asked whether the plan would cover Plaintiff if she were out-of-network, for example, if her surgeon were in California, and the representative indicated that the plan would.

115.  On or about August 19, 2021, Defendants, Geisinger Health Plan, Geisinger Quality Options, Inc., Geisinger Indemnity Insurance Company, Geisinger Health System, Geisinger, and/or ABC Corporation, denied Plaintiff's preauthorization request seeking coverage for facial feminization surgery even though the procedures constituted a form of gender affirming care and treatment for Plaintiff.

116.  The Geisinger Defendants denied medically necessary gender affirming care and treatment for Plaintiff's gender dysphoria disability.

117.  The Geisinger Defendants, in practice, singled out Plaintiff and other people who are transgender who suffer from gender dysphoria for unequal treatment by creating a barrier for them to access medical services to treat their gender dysphoria disability.

118.  The Geisinger Defendants, in practice, drew a line between procedures sought as a form of gender affirming care and treatment, and other procedures, and specifically excluded the aforementioned gender affirming procedures for Plaintiff and other transgender people with a gender dysphoria diagnosis.

119.  The Geisinger Defendants applied their exclusion for cosmetic procedures in a way that discriminates against diagnoses of gender dysphoria and discriminated against Plaintiff solely on the basis of that diagnosis. *See Doe v. City of Philadelphia, et al.*, 2024 WL 3634221, at \*6 (E.D. Pa. Aug. 2, 2024) (denying the insurer's motion to dismiss Plaintiff's disability discrimination claim because, "As alleged in the Second Amended Complaint, IBX [the insurer] applied its 'functional impairment' exception to its exclusion for cosmetic procedures in a way that discriminates against diagnoses of gender dysphoria. Doe thus plausibly has alleged that she was discriminated against solely because of that diagnosis.").

120.  Plaintiff expended large sums of money to pay for facial feminization procedures not covered by Defendant including approximately $97,000.00 to cover the aforementioned procedures not covered by insurance. Plaintiff was forced to expend at that time what was, in essence, Plaintiff's entire life savings to date.

121.  The four-year Federal catch-all statute of limitations applies to Plaintiff's claims under Section 1557 of the ACA. *See* 28 U.S.C. § 1658(a).

**WHEREFORE**, Plaintiff, Michael "Doe," requests judgment in favor of Plaintiff and against Defendants, Geisinger Health Plan, Geisinger Quality Options,

43

Inc., Geisinger Indemnity Insurance Company, Geisinger Health System, Geisinger, Risant Health, Inc., Risant Health, Kaiser Permanente, Kaiser Foundation Health Plan, Kaiser Foundation Hospitals, Permanente Medical Groups, and ABC Corporation, jointly and severally, in an amount which will fully and fairly compensate Plaintiff for any and all out-of-pocket costs/expenses, attorneys' fees, costs, pre- and post-judgment interest, equitable and injunctive relief requiring Defendants to cover transgender individuals who suffer from gender dysphoria for facial feminization surgery and any further relief that this Court deems just, proper, and equitable.

## COUNT III:
## BREACH OF CONTRACT AND OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
## (PLAINTIFF, MICHAEL "DOE" v. DEFENDANTS, GEISINGER HEALTH PLAN, GEISINGER QUALITY OPTIONS, INC., GEISINGER INDEMNITY INSURANCE COMPANY, GEISINGER HEALTH SYSTEM, GEISINGER, RISANT HEALTH, INC., RISANT HEALTH, KAISER PERMANENTE, KAISER FOUNDATION HEALTH PLAN, KAISER FOUNDATION HOSPITALS, PERMANENTE MEDICAL GROUPS, AND ABC CORPORATION)

122.  Plaintiff restates and realleges all previous paragraphs as though fully set forth here.

123.  Defendants, Geisinger Health Plan, Geisinger Quality Options, Inc., Geisinger Indemnity Insurance Company, Geisinger Health System, Geisinger, and/or ABC Corporation, issued and had in place for the Plaintiff a policy of health insurance to insure Plaintiff for healthcare.

124.  Plaintiff was a party to the contract that existed between Plaintiff and the Geisinger Defendants.

125.  Plaintiff purchased an insurance policy from the Geisinger Defendants believing that the policy would cover Plaintiff for gender affirming care and treatment that was medically necessary to treat her gender dysphoria.

126.  On or about April 30, 2021, Plaintiff called and spoke with a representative of Pennsylvania's health insurance marketplace exchange, or Pennie, and specifically inquired about the plans that would cover gender affirming care. Plaintiff was presented the option of a plan sold by the Geisinger Defendants. Plaintiff specifically asked the representative whether facial feminization surgery, or FFS, forehead surgery, and jaw surgery, would be covered under the plan to be purchased, or words to that effect. The representative stated that the plan would cover those procedures, or words to that effect. Plaintiff was given no reason to doubt the same. Plaintiff would not have purchased the plan had she understood differently that facial feminization surgery would not be covered by the plan. Plaintiff also asked whether the plan would cover Plaintiff if she were out-of-network, for example, if her surgeon were in California, and the representative indicated that the plan would.

127.  At all times relevant hereto, Plaintiff paid premiums to the Geisinger

Defendants believing that they would honor their part of the bargain and cover Plaintiff for gender affirming care and treatment that was medically necessary to treat her gender dysphoria.

128.  A true and correct copy of what Plaintiff contends constituted the essential terms of the contract between Plaintiff and the Geisinger Defendants, the Geisinger Health Plan Policies and Procedures Manual, Medical Benefit Policy, Gender Dysphoria and Gender Confirmation Treatment, Policy MP307, is attached hereto as Exhibit "A."

129.  Though not known to Plaintiff at the time of the purchase of the policy, Plaintiff points out that, while acknowledging the Geisinger Defendants' exclusions of gender affirming care, that the Geisinger Defendants' medical policy on gender dysphoria treatment does state: "Facial implants, injections, or bone reduction (may be considered on a per-case basis with appropriate clinical documentation)." *See* Exhibit "A," Geisinger Medical Policy MP307, at p. 3.

130.  More specifically, a portion of the subject policy states, "EXCLUSIONS: The following procedures are considered to be cosmetic and not medically necessary to complete gender transition … body sculpting (*e.g.*, masculinization or feminization of face … ."). *See* Exhibit "A," at p. 3. However, the subject policy also states that the following procedures are also

excluded: "Facial implants, injections, or bone reduction **(may be considered on a per-case basis with appropriate clinical documentation)**" (emphasis added). *See id.*

131. At all times relevant hereto, the Geisinger Defendants had a duty to apply the provisions of the policy including the above provision of the policy correctly with respect to Plaintiff who sought coverage for procedures that included facial implants, injections, and bone reduction, which constituted medically necessary gender affirming care and treatment to alleviate Plaintiff's gender dysphoria.

132. However, in practice, the Geisinger Defendants did not apply the above provision properly with respect to Plaintiff.

133. On or about August 19, 2021, the Geisinger Defendants denied Plaintiff's preauthorization request seeking coverage for facial feminization surgery even though the procedures constituted a form of gender affirming care and treatment for Plaintiff.

134. Plaintiff submitted clinical documentation to the Geisinger Defendants in the form of a letter of medical support from her mental health provider, and Plaintiff's surgeon had also recommended the performance of the subject procedures.

135. The Geisinger Defendants breached their contractual duty to Plaintiff by failing

to properly apply the language of the policy to Plaintiff's circumstances.

136. The Geisinger Defendants breached their contractual duty to Plaintiff by failing to cover Plaintiff's case based on the clinical documentation submitted by Plaintiff to the Geisinger Defendants pursuant to the policy.

137. In addition, it is not believed that anywhere in the Geisinger Defendants' policy related to gender dysphoria treatment, attached as Exhibit "A," is there any reference to a requirement that an adult individual must undergo hormone replacement therapy for one (1) full year before being considered for facial feminization procedures.  The Geisinger Defendants breached their duty to apply the relevant provisions of the policy to Plaintiff's circumstances, based on the clinical documentation she supplied, by requiring Plaintiff to undergo hormone replacement therapy for one (1) full year before being considered for facial feminization procedures.

138. Further, nowhere in the Geisinger Defendants policy, attached as Exhibit "A," is there a reference to a requirement that an individual must be limited in chewing or swallowing to qualify them for facial feminization procedures, as it appears, according to the language in the policy, that the policy permits facial feminization procedures when there is appropriate clinical documentation of impairments in, for example, social, occupational, or other important areas of

functioning related to gender dysphoria, not just chewing or swallowing. The Geisinger Defendants have incorrectly applied the provisions of the policy to Plaintiff.

139. The Geisinger Defendants also stated as another reason for their denial in Exhibit "B" that Plaintiff did not have behavioral health evaluations from two (2) clinicians. This is incorrect. Plaintiff did have the support of her surgeon and of her mental health provider. Plaintiff's surgeon was a plastic surgeon and transgender healthcare specialist. Plaintiff's therapist has expertise in mental health treatment of transgender individuals. This stated reason completely disregards the knowledge and opinions of the two (2) healthcare professionals who supported Plaintiff's request and who had expertise in gender affirming care. Further, only *one* provider supported the Defendants' denial initially, and that provider was a *hand* surgeon, in the context of a *facial* surgery.

140. It is alleged that the Geisinger Defendants have engaged in predatory behavior as it is alleged they never intended to pay Plaintiff's claim and, at all relevant times, were looking for reasons to deny the claim out of financial self-interest.

141. The Geisinger Defendants forced Plaintiff to file unnecessary litigation to secure coverage for medically necessary gender affirming care and treatment to which Plaintiff was entitled by the language of the policy.

142. Furthermore, at all times relevant hereto, the Geisinger Defendants had a duty of good faith and fair dealing with respect to Plaintiff in the Geisinger Defendants' performance and enforcement of the contract at issue.

143. The Geisinger Defendants breached the implied covenant of good faith and fair dealing with Plaintiff.

144. As a direct and proximate result of the Geisinger Defendants' breaches of their contractual duties and of the duties of good faith and fair dealing, Plaintiff suffered damages for which Plaintiff seeks to recover against Defendants for out-of-pocket costs and expenses paid for the subject procedures.

145. The Geisinger Defendants failed to make payment pursuant to the Policy which has caused Plaintiff to expend large sums of monies in attempts to alleviate her gender dysphoria through medically necessary procedures for which the Geisinger Defendants unlawfully denied coverage.

146. Plaintiff expended large sums of money to pay for facial feminization procedures not covered by Defendants including approximately $97,000.00 to cover the aforementioned procedures without insurance. Plaintiff was forced to expend at that time what was, in essence, Plaintiff's entire life savings to date.

**WHEREFORE**, Plaintiff, Michael "Doe," requests judgment in favor of

Plaintiff and against Defendants, Geisinger Health Plan, Geisinger Quality Options, Inc., Geisinger Indemnity Insurance Company, Geisinger Health System, Geisinger, Risant Health, Inc., Risant Health, Kaiser Permanente, Kaiser Foundation Health Plan, Kaiser Foundation Hospitals, Permanente Medical Groups, and ABC Corporation, jointly and severally, in an amount which will fully and fairly compensate Plaintiff for any and all out-of-pocket costs/expenses, pre- and post-judgment interest, and any further relief that this Court deems just, proper, and equitable.

**COUNT IV:**
**VIOLATION OF THE UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW ("UTPCPL"), 73 P.S. §§ 201-1 - 201-9.2 (PLAINTIFF, MICHAEL "DOE" v. DEFENDANTS, GEISINGER HEALTH PLAN, GEISINGER QUALITY OPTIONS, INC., GEISINGER INDEMNITY INSURANCE COMPANY, GEISINGER HEALTH SYSTEM, GEISINGER, RISANT HEALTH, INC., RISANT HEALTH, KAISER PERMANENTE, KAISER FOUNDATION HEALTH PLAN, KAISER FOUNDATION HOSPITALS, PERMANENTE MEDICAL GROUPS, AND <u>ABC CORPORATION</u>)**

147.   Plaintiff restates and realleges all previous paragraphs as though fully set forth here.

148.   Defendants, upon information and belief, advertise to the transgender community that Defendants provide inclusive care.

149.   At all times relevant hereto, Defendants, Geisinger Health Plan, Geisinger Quality Options, Inc., Geisinger Indemnity Insurance Company, Geisinger Health System, Geisinger, and/or ABC Corporation, issued and had in place for

the Plaintiff a policy of health insurance to insure Plaintiff for healthcare.  A true and correct copy of the Policy applicable to Plaintiff's claim at the time is attached hereto as Exhibit "A."

150.   Plaintiff sought insurance coverage from the Geisinger Defendants for facial feminization surgery, which constituted a form of gender affirming care and treatment, in an attempt to alleviate Plaintiff's gender dysphoria.

151.   Plaintiff did not elect to purchase health insurance through her employer's health insurance plan, because Plaintiff wanted to ensure that the facial feminization surgery procedures that Plaintiff specifically sought would be covered by insurance at the relevant time.

152.   Plaintiff has been working as a food delivery driver.  Plaintiff discontinued her employer's health insurance coverage and instead sought coverage from the Geisinger Defendants for facial feminization surgery procedures believing them to be covered.  The plan ultimately purchased by Plaintiff from the Geisinger Defendants was not an employer sponsored health plan covered by the Employee Retirement Income Security Act ("ERISA").

153.   Specifically, on or about April 30, 2021, Plaintiff called and spoke with a representative of Pennsylvania's health insurance marketplace exchange, or Pennie, the Pennsylvania Health Insurance Exchange Authority, and

specifically inquired about the plans that would cover gender affirming care. Plaintiff was presented the option of a plan sold by the Geisinger Defendants. Plaintiff specifically asked the representative whether facial feminization surgery, or FFS, forehead surgery, and jaw surgery, would be covered under the plan to be purchased, or words to that effect. The representative stated that the plan would cover those procedures, or words to that effect. Plaintiff was given no reason to doubt the same. Plaintiff would not have purchased the plan had she understood differently that facial feminization surgery would not be covered by the plan. Plaintiff also asked whether the plan would cover Plaintiff if she were out-of-network, for example, if her surgeon were in California, and the representative indicated that the plan would.

154. It is believed and averred that the representative from Pennie, the Pennsylvania Health Insurance Exchange Authority, who spoke with Plaintiff was an insurance agent or an insurance broker acting, at all times relevant hereto, on behalf of the Geisinger Defendants, in selling the subject policy on behalf of the Geisinger Defendants, producing the subject policy on behalf of the Geisinger Defendants, and who, it is believed and therefore averred, received payment in the form of a commission from the Geisinger Defendants to do so. It is alleged that the Geisinger Defendants are responsible for the

representations made by their insurance agents or brokers acting on their behalf with respect to the Pennsylvania Health Insurance Exchange Authority.

155.    In 2021, Plaintiff found difficulties in making ends meet but she ensured that she paid premiums every month in a timely manner to the Geisinger Defendants.  Plaintiff did so in order to ensure she maintained health insurance coverage with the Geisinger Defendants that Plaintiff believed would specifically cover the gender affirming procedures Plaintiff would be seeking. Because of Defendants' ultimate denial of coverage for these procedures, Plaintiff was forced to expend at that time what was, in essence, Plaintiff's entire life savings to date.

156.    In reliance on the representation that the Geisinger Defendants' insurance plan would cover facial feminization surgery procedures, Plaintiff elected to purchase the Geisinger Defendants' health insurance plan.  The effective date of the insurance plan that was purchased by Plaintiff from the Geisinger Defendants was May 1, 2021.

157.    The specific reason why Plaintiff sought and purchased the plan at the time, believing the representation that facial feminization surgery procedures would be covered under the plan, was because Plaintiff had scheduled a surgery date for the facial feminization surgery procedures for July 2, 2021.  The specific

facial feminization surgery procedures sought by Plaintiff were the reason why she procured health insurance coverage from the Geisinger Defendants in the first instance.

158.   On or about June 28 or 29, 2021, Plaintiff submitted a preauthorization request to the Geisinger Defendants for coverage of the subject facial feminization surgery procedures.

159.   On account of the representation made to Plaintiff at the time of the sale of the insurance policy to Plaintiff, Plaintiff did not believe at the time that coverage for the procedures would be denied.  Plaintiff proceeded with the surgery which occurred as scheduled on July 2, 2021.

160.   Plaintiff supplied medical documentation in support of her request for coverage of the subject procedures in or about July 2021, including medical support from both her surgeon and a mental health provider, and still believing at the time that the subject procedures would be covered.

161.   On August 19, 2021, the Geisinger Defendants provided Plaintiff an initial denial of Plaintiff's preauthorization request seeking coverage for facial feminization surgery even though the procedures constituted a form of gender affirming care and treatment for Plaintiff.

162.   The Geisinger Defendants have engaged in predatory behavior when they never

intended to cover Plaintiff's claim in the first place.

163. Defendants engaged in unfair trade practices and deceptive conduct against Plaintiff in violation of, *inter alia*, §§ 201-2(4)(vii), (ix), and (xxi) of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") specifically in the selling of the insurance policy to Plaintiff.

164. As a direct and proximate result of Defendant's predatory, unfair trade practices, and deceptive conduct, Plaintiff suffered damages for which Plaintiff seeks to recover against Defendants for out-of-pocket costs and expenses paid for the subject procedures.

165. Plaintiff expended large sums of money to pay for facial feminization procedures not covered by Defendants including approximately $97,000.00 to cover the aforementioned procedures without insurance. Plaintiff was forced to expend at that time what was, in essence, Plaintiff's entire life savings to date.

166. Plaintiff is permitted to institute this claim under § 201-9.2 of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") for actual damages. The court may also in its discretion award up to three times the actual damages sustained and may provide such additional relief as the court deems necessary or proper.

167. The UTPCPL has a six-year statute of limitations applicable to the

aforementioned conduct.

**WHEREFORE**, Plaintiff, Jane Doe, requests judgment in favor of Plaintiff and against Defendants, Geisinger Health Plan, Geisinger Quality Options, Inc., Geisinger Indemnity Insurance Company, Geisinger Health System, Geisinger, Risant Health, Inc., Risant Health, Kaiser Permanente, Kaiser Foundation Health Plan, Kaiser Foundation Hospitals, Permanente Medical Groups, and ABC Corporation, jointly and severally, in an amount in excess of $150,000.00 which will fully and fairly compensate Plaintiff for any and all out-of-pocket costs/expenses, treble damages, reasonable attorneys' fees and costs, and any further relief that this Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiff hereby requests a trial by jury of eight (8) members on all counts so triable.

DATED:  <u>07/01/2025</u>                    Respectfully submitted,

Justin Robinette, Esquire
PA Supreme Court I.D. No. 319829
One Liberty Place,
1650 Market Street, Suite 3600
PMB #2494
Philadelphia, PA 19103
Tel: (267) 595-6254

Fax: (267) 592-3067
Justin@JRobinetteLaw.com

*Attorney for Plaintiff,*
*Michael "Doe"*

# **<u>VERIFICATION</u>**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws

of the United States of America that the foregoing is true and correct.

07/01/2025

DATED: _____         BY: _____

Michael ██████ (Jul 1, 2025 22:44 EDT)

Michael ████████